IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA J.[1],

          Plaintiff,

   v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

       Defendant.

Case No. 6:21-cv-1468-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR, PC,
474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED
STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Heidi
L. Triesch, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

     Plaintiff Lisa J. appeals the final decision of the Commissioner of the Social Security

Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits

---

    [1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

(DIB) under Title II of the Social Security Act (Act). The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42

U.S.C. § 405(g). As explained below, the Court reverses the Commissioner's decision and

remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB on February 21, 2018, alleging a disability onset of May 17, 2017. AR 72, 201. Born in 1969, Plaintiff was 47 years old on the alleged onset date. AR 72. Plaintiff worked as a software technician at Hewlett-Packard, Inc. (HP) for more than 15 years. AR 47-48, 287-88. She alleges that she is now unable to work due to degenerative disc disease, bone spurs, narrowing of the spine, slipped discs, fibromyalgia, restless leg syndrome, irregular z-line, irritable bowel syndrome, migraines, and hiatal hernia. AR 201-04, 72-73.

The agency denied Plaintiff's claim both initially, AR 110-14, and upon reconsideration, AR 132-34. On August 15, 2019, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 115. She appeared by telephone for a hearing before ALJ Triplett on August 28, 2020. AR 34-71. On December 24, 2020, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 12-33. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied her request for review on August 18, 2021. AR 1-6. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" (RFC). This is an assessment of
work-related activities that the claimant may still perform on a regular and
continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2022. AR 17. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 17, 2017, the alleged onset date. *Id.* At step two, the ALJ found the following severe, medically determinable impairments: degenerative disc disease, obesity, and right shoulder impingement with rotator cuff partial tear status post surgical repair. *Id.* The ALJ found that Plaintiff's other alleged debilitating impairments, including her alleged fibromyalgia, did not qualify as severe, medically determinable impairments. AR 18. At step three, the ALJ determined that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19.

The ALJ then found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b)3 except she can occasionally stoop, kneel, crouch, . . . crawl[,] . . . [and] reach overhead bilaterally." AR 20. At step four, the ALJ found that Plaintiff retained the capacity to perform her past relevant work as a software engineer. AR 26. In the alternative, the ALJ found at step five that Plaintiff retained the capacity to perform other jobs in the national economy. AR 26-27. The ALJ then found that Plaintiff was not disabled under the Act from the alleged onset date of May 17, 2017, through December 24, 2020, the date of the ALJ's decision. AR 28.

## DISCUSSION

Plaintiff argues that the ALJ erred: (1) at step two, in concluding that Plaintiff's alleged fibromyalgia is not a medically determinable impairment; (2) by improperly rejecting Plaintiff's subjective symptom testimony; and (3) by improperly discounting the medical opinions of Laura Rung, MD, and Christopher Smith, PA-C. The Court discusses each issue in turn.

### A.  Step Two Rejection of Fibromyalgia as a Medically Determinable Impairment

#### 1.  Standards at Step Two

At step two of the sequential evaluation process, the ALJ determines whether the claimant has one or more impairments (or combination of impairments) based on review of the medical record, and then determines whether these impairments are "severe." *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). It is Plaintiff's burden to prove that an impairment affects her ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

That said, "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (stating that step two is a "de minimis screening device" to "dispose of groundless claims" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996))). Accordingly, the severity analysis within step two is a "low bar" to clear. *Gardner v. Astrue*, 257 Fed. App'x. 28, 29 (9th Cir. 2007).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290) (emphasis added in *Webb*). As a result, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his [or her] conclusion is clearly established by medical evidence." *Id.* at 687 (quotation marks omitted). "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.* In other words, there must be "substantial evidence to show that [the claimant's] claim was groundless." *Id.* at 688 (quotation marks omitted). Omissions at step two generally are harmless error if step two is decided in the claimant's favor and the nonsevere conditions are considered by the ALJ. *Buck*, 869 F.3d at 1048-49 (concluding that the plaintiff "could not possibly have been prejudiced" by an omission of a severe impairment at step two because the ALJ decided step two in the plaintiff's favor and considered the condition).

### 2.  Standards for Fibromyalgia

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quotation marks omitted). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" *Id.* (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). "What is unusual about the disease" is that individuals suffering from fibromyalgia have normal "muscle strength, sensory functions, and reflexes." *Id.* (quotation marks omitted). Further, "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. Fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.* Although there used to be "considerable skepticism that fibromyalgia was a real disease," a "sea-change" occurred in 2012 after the Social Security Administration issued a ruling recognizing fibromyalgia as a valid basis for a finding of disability. *Revels*, 874 F.3d at 656; Social Security Ruling (SSR) 12-2P, 2012 WL 3104869, at *2 (July 25, 2012).

The Commissioner used criteria set forth in SSR 12-2P in evaluating fibromyalgia. *Revels*, 874 F.3d at 656-57 (describing the two sets of criteria for diagnosing the condition).

> The ruling provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and

> may not always be present"); (2) she has experienced repeated
> manifestations of six or more fibromyalgia symptoms, signs, or co-
> occurring conditions, "especially manifestations of fatigue,
> cognitive or memory problems ("fibro fog"), waking unrefreshed,
> depression, anxiety disorder, or irritable bowel syndrome"; and
> (3) there is evidence that other disorders are not accounting for the
> pain.

*Id.* at 656-57 (citations omitted) (quoting SSR 12-2p, at *2-3). Thus, regardless of which set of

criteria is used, there must be evidence that other disorders do not account for the pain.

### 3.  Analysis

#### a.  Medically Determinable Impairment

Plaintiff challenges the ALJ's finding that Plaintiff's alleged fibromyalgia is not a

medically determinable impairment. The ALJ rejected Plaintiff's alleged fibromyalgia at step

two because "there is no evidence that medical doctors have excluded other impairments as

required in SSR 12-2p." AR 18.

The Commissioner defends the ALJ's decision, correctly pointing out Plaintiff may not

rely on a diagnosis of fibromyalgia[2] alone to establish that it is a medically determinable

impairment. The record must also contain "[e]vidence that other disorders that could cause the

symptoms or signs were excluded." SSR 12-2p at *3. SSR 12-2p explains:

> Other physical and mental disorders may have symptoms or signs
> that are the same or similar to those resulting from [fibromyalgia].
> Therefore, it is common in cases involving [fibromyalgia] to find
> evidence of examinations and testing that rule out other disorders
> that could account for the person's symptoms and signs.

*Id.* at *3 (footnote omitted).

---

[2] Plaintiff was diagnosed with fibromyalgia with an onset date of October 2, 2017.
AR 588. In January 2018, Laura Rung, MD, found that Plaintiff met the diagnostic criteria for
fibromyalgia according to the American College of Rheumatology. AR 718-19. The
Commissioner does not contest that Plaintiff was diagnosed with fibromyalgia.

The ALJ's conclusion that other disorders were not sufficiently excluded is not supported by substantial evidence in the record. "SSR 12-2p does not require fibromyalgia to be a stand-alone impairment. And multiple circuits, including [the Ninth Circuit], have found degenerative disc disease or related MDIs to co-exist with fibromyalgia." *Swales v. Saul*, 852 F. App'x 253, 255 (9th Cir. 2021) (citation omitted). For example, fibromyalgia can co-exist with degenerative disc disease, *Arakas v. Comm'r*, 983 F.3d 83, 94 (4th Cir. 2020); arthritis and obesity, *Revels*, 874 F.3d at 656; or degenerative disc disease, depression, and obesity, *Romero v. Colvin*, 563 F. App'x 618, 619 (10th Cir. 2014). As discussed further below, there is evidence in the record that various physicians either considered other pain sources to co-exist with Plaintiff's fibromyalgia, or implicitly ruled out other conditions as the source of Plaintiff's chronic pain. Moreover, neither the ALJ nor the Commissioner list any disorders that should have been excluded for Plaintiff's fibromyalgia diagnosis to stand. Thus the Commissioner and ALJ appear to have applied a "more stringent standard for exclusion of other impairments" than required by SSR 12-2p or the Ninth Circuit. *Swales*, 852 F. App'x at 255.

Several physicians considered other pain sources to co-exist with Plaintiff's fibromyalgia, particularly her neck pain and disc disease. For example, Laura Rung, MD, found that Plaintiff's fibromyalgia co-existed with chronic neck pain. Dr. Rung reviewed Plaintiff's medical history and MRI scan findings, assessed that Plaintiff had chronic neck pain, and nevertheless found that Plaintiff met the diagnostic criteria for fibromyalgia according to the American College of Rheumatology. AR 717-18. Dr. Rung concluded that "fibromyalgia central sensitivity, along with chronic neck pain secondary to degenerative joint disease and chronic right shoulder pain with pathologic findings seen on MRI have combined to produce the activity restrictions necessary for daily pain control." AR 719. This conclusion is sufficient evidence that Dr. Rung

excluded other disorders. *Cf. Oudinot-Robertson v. Berryhill*, 2017 WL 4185490, at *3 (D. Or.

Aug. 7, 2017), *report and recommendation adopted*, 2017 WL 4182807 (D. Or. Sept. 21, 2017)

(finding that there was evidence that a medical doctor had excluded other impairments because

"Dr. Hahn documented plaintiff's back and neck pain upon examination—and had access to

imaging studies revealing '[m]ultilevel degenerative spondylosis' in the lumbar and cervical

spine—but nonetheless diagnosed plaintiff with fibromyalgia (in addition to other spinal

impairments)").

     Jarod Smith, DNP, ARNP, FNP-C, also opined that Plaintiff's fibromyalgia co-exists

with her other disorders. Mr. Smith noted that Plaintiff "continues to suffer from chronic

migraines w/o aura, neck pains due to spondylosis w/ radiculopathy, spasmodic torticollis, spinal

stenosis, occipital neuralgia, cramps/spasms, and left foot pains. These pains are further

complicated by Fibromyalgia." AR 992.

     Other physicians implicitly ruled out other conditions as the source of Plaintiff's

fibromyalgia symptoms. Dr. Richard Stanley, Plaintiff's orthopedic surgeon, noted in

March 2017 that Plaintiff has failed cervical spine trigger point injections, physical therapy, and

"an extensive course of conservative treatment" for her cervical spine and shoulder pain.

AR 347. Dr. Stanley recommended an updated MRI to further evaluate the influence of

Plaintiff's degenerative disc disease on her cervical spine pain and rule out other causes, but

noted that she "will continue to follow with her neurologist regarding additional treatment of her

fibromyalgia symptoms." *Id.* This suggests that Dr. Stanley did not consider Plaintiff's possible

degenerative disc disease to rule out fibromyalgia and endorsed treating both.

     Plaintiff's unsuccessful treatments provide further evidence of exclusion of other

impairments. Various injections, which might have resolved other disorders, did not alleviate

Plaintiff's pain. As a result of Plaintiff's cervical MRI in 2017, Dr. Stanley, as well as Mr. Smith, recommended epidural steroid injections. AR 760, 444. Plaintiff underwent a C7-T1 epidural steroid injection in August 2017. AR 432. After this injection, she experienced a slight reduction in shoulder pain, but no relief in her neck pain, which continued to limit her daily activities. AR 429, 717 ("[S]he has been able to maintain better pain control by limiting activities and lying down to rest for 2-3 hours every day. Neck pain is increased quickly with any prolonged looking down, lifting, or repetitive use of the right arm."). Other injections were similarly ineffective in resolving Plaintiff's reported pain. *See* AR 347, 598 (cervical spine trigger point injections failed); AR 760, 434 (right shoulder subacromial corticosteroid injection in June 2017 followed by fluctuating improvement but mostly "days of increased pain"); AR 599 (right elbow intra-articular corticosteroid injection placement at first showed significant improvement in right elbow pain but recurrent right elbow pain returned); AR 816-17, 830, 838 (trigger point injections in April 2019 provided at most temporary pain relief, as "neck pain jumped up" during June 2019, and injections caused "pain flares").

Interventional management was also ineffective. Plaintiff had shoulder surgery in October 2018. AR 578-81. She initially reported "interval improvement," AR 628 (October 2018), and improvement in her shoulder pain and range of motion, AR 598-99 (March 2019), though she continued to experience "residual right shoulder elbow pain symptoms." *Id.* By April 2019, however, she again reported shoulder pain and increased neck pain, AR 814, and her shoulder muscles were tender to palpitation. *See* AR 815. In January 2020, Plaintiff reported some benefits from the surgery, but it did not resolve her pain. See AR 849-50 ("Overall, the patient has been pleased with her interval improvement regarding her range of motion and strength of the right shoulder. However, the patient continues to report persistent right-sided

predominant cervical spine symptoms that extends into the periscapular region of her

shoulders."); *see also* AR 53 (Plaintiff's testimony that "I have regret doing the shoulder

surgery" because it did not resolve "any of the symptoms" related to her shoulder).

Plaintiff underwent an occipital nerve block in September 2019, AR 827-28, but this

treatment provided no relief. AR 840. In October 2019, Patrick Rask, MD, wrote, "[s]ince the

patient has not responded well from interventional management, I will not make any

recommendations for injections or procedures at this time." AR 840. After this unsuccessful

treatment series, Dr. Rusk continued to recognize Plaintiff's fibromyalgia diagnosis. AR 839.

As the records from Dr. Rusk and Dr. Stanley demonstrate, Plaintiff's treating providers

continually acknowledged her fibromyalgia diagnosis despite referring her for additional

imaging studies and treatments. *See, e.g.*, AR 430, 435, 663, 474, 840, 849, 992. It is reasonable

to interpret, based on this continued recognition of fibromyalgia after Plaintiff's extensive

treatments, that the providers implicitly ruled out other disorders as accounting for the pain

associated with fibromyalgia.

Yet the ALJ merely concluded that there was "no evidence" of exclusion of other

impairments. "At minimum, the ALJ must provide a more thorough explanation as to why the

record does not support a fibromyalgia [medically determinable impairment]." *Swales*, 852 F.

App'x at 255 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009)).

For the ALJ's conclusion to have the support of substantial evidence, the ALJ should explain

why the evidence discussed above is nevertheless inapplicable to the SSR 12-2p criteria, or

which disorders were not ruled out by Plaintiff's extensive treatment and other records. Further

explanation is not an improper shifting of burden, as the Commissioner suggests—rather, it is

necessary for the ALJ to "explain his reasoning to ensure that the correct legal standard has been

applied." *Id.* The Court concludes that the ALJ erred at step two by rejecting fibromyalgia as a medically determinable impairment without explanation.

### b. Severe Impairment

Not only was the record sufficient for the ALJ to find at step two that Plaintiff's diagnosed fibromyalgia a medically determinable impairment, but it is arguably a *severe* impairment. *See Smolen*, 80 F.3d at 1290 (noting that at step two an impairment "can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work'" (quoting SSR 85-28)). Applying the "low bar" at step two, the treatment records provide ample evidence that Plaintiff's claims of severe impairment from fibromyalgia were not "groundless." *See Webb*, 433 F.3d at 688. Dr. Rung, for example, examined Plaintiff twice in 2018 and concluded that she "would not be able to maintain full-time competitive employment" without significant work activity limitations. AR 718, 708. Upon a third examination in 2019, Dr. Rung concluded that Plaintiff "would likely have to take off days from work so frequently that she would not be able to maintain gainful employment." AR 881. Other providers' documentation of pain and recognition of fibromyalgia appear to support Dr. Rung's severity assessment. Therefore, at the "de minimis" step two, the medical evidence does not *clearly* establish that Plaintiff's fibromyalgia was not a medically severe impairment. *See Webb*, 433 F.3d at 687.

### c. Harmful Error

Because the ALJ found that Plaintiff's alleged fibromyalgia was not a medically determinable impairment, the ALJ did not include fibromyalgia in his RFC analysis. This was harmful error because it affected the ALJ's analysis of Plaintiff's symptom testimony and the opinions of Plaintiff's treating providers. *See Swales*, 852 F. App'x at 255-56 ("Because the ALJ discredited Swales's testimony and her treating nurse practitioner's opinion because of perceived

inconsistency between Swales's subjective complaints and objective medical evidence, an error in excluding fibromyalgia as an MDI at step two is prejudicial to Swales. Thus, the error is not harmless, and we will reverse and remand for further proceedings." (citation omitted)).

Like the ALJ in *Swales*, the ALJ here rejected Plaintiff's subjective symptom testimony about her debilitating pain because "[a]lthough the claimant is treated for chronic widespread pain (sometimes attributed to fibromyalgia)," examinations showed normal muscle strength, reflexes, sensation, and range of motion. AR 22. The ALJ also pointed out that MRI imaging indicated only "mild to moderate" findings "not suggestive of nerve damage." *Id.* Similarly, the ALJ called Dr. Rung's opinion "poorly supported" in part because Dr. Rung noted that MRI findings do not suggest nerve damage, and because Plaintiff's gait, reflexes, and muscle strength were normal. AR 25. The ALJ also found Dr. Rung's recommended activity restrictions not consistent with other portions of the record, including treatment records documenting intact muscle strength, full range of motion, and improvement in pain levels after treatment.[3] *Id.*

These MRI results, "normal" findings, and temporary improvements, however, are not inconsistent with fibromyalgia. *See Revels*, 874 F.3d at 657 ("[D]iagnosis of fibromyalgia does not rely on X-rays or MRIs."); *id.* at 656 ("What is unusual about [fibromyalgia] is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal." (cleaned up)); SSR 12-2P, at *6 (recognizing that the symptoms of fibromyalgia "wax and wane," so that a person may have "bad days and good days"). The ALJ's reliance on MRI findings and "normal" examinations to reject Plaintiff's subjective testimony and Dr. Rung's opinion demonstrates that the ALJ did not consider limitations caused by Plaintiff's fibromyalgia, a

---

[3] The parties dispute whether there is substantial evidence in the record to demonstrate that Plaintiff's treatment led to improvement in her pain levels, as discussed below. Even under the ALJ's reasoning, however, temporary improvements are not inconsistent with fibromyalgia.

condition that is "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *See Benecke*, 379 F.3d at 590. In other words, the ALJ "effectively requir[ed] 'objective' evidence for a disease that eludes such measurement." *Id.* at 594 (quotation marks omitted). As a result, the ALJ assessed a flawed and incomplete RFC at steps four and five of the sequential analysis.

This error could have changed the outcome of the ALJ's disability determination. If the ALJ had considered fibromyalgia when evaluating the persuasiveness of Dr. Rung's functional assessment and determining the RFC, he may not have concluded that Dr. Rung's functional assessment was "overly restrictive." AR 25. Dr. Rung's opinion, if fully credited, could result in a finding of disability for Plaintiff. According to Dr. Rung, "based upon history of fibromyalgia and chronic neck pain, . . . [Plaintiff] is disabled from performing competitive work. She would likely have to take off days from work so frequently that she would not be able to maintain gainful employment." AR 881. Vocational expert testimony confirmed that missing work for multiple days a month would not be compatible with employment. AR 65-69.

Remand is therefore appropriate to reconsider whether fibromyalgia is a medically determinable impairment. If it is, "the ALJ must reconsider the [RFC] analysis in light of fibromyalgia's unique characteristics, including that it is diagnosed based on a patient's self-reported symptoms and that outwardly normal physical examinations are to be expected." *Swales*, 852 F. App'x at 255.

Alternatively, if the ALJ had properly analyzed the fibromyalgia-related evidence, the RFC evaluation might have been unnecessary. If the ALJ found that fibromyalgia was a severe medically determinable impairment, ALJ could have examined, under step three, whether Plaintiff's fibromyalgia medically equaled a *listed* impairment. *Buell v. Berryhill*, 716 F.

App'x 600, 602 (9th Cir. 2017) ("Because the ALJ improperly found Buell's fibromyalgia was not a severe MDI, he also did not analyze under Step Three whether Buell's fibromyalgia, coupled with other impairments, medically equaled a listed impairment."). If the ALJ had found Plaintiff's fibromyalgia equaled a listed impairment, inquiry into Plaintiff's RFC would have been superfluous. *Id.* at 603; *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (explaining that if the claimant's impairments meet or equal a listed impairment under Step Three, "the claimant is considered disabled and benefits are awarded, ending the inquiry"). "Because the ALJ's error may have influenced the outcome of the case by leading the ALJ to proceed unnecessarily to Step Four, it was not harmless." *Buell*, 716 F. App'x at 603.

## B. Plaintiff's Testimony

### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[4] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[4] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

### 2.  Analysis

Plaintiff reported that her impairments caused her to miss significant work, leave work early numerous times, and call in sick at least every other week. AR 261, 49, 52-53. The pain and other symptoms from her impairments prevented her from falling asleep despite overwhelming fatigue. AR 261-62. Bathing was "torture," but she made herself do it weekly, and tended to stay in pajamas to avoid the pain of dressing. AR 263. Looking down was "agony." AR 263. Her best friend lived in Portland, but Plaintiff could not make the drive to visit.[5] AR 265. Her impairments impacted her ability to lift, bend, reach, kneel, remember, complete tasks, concentrate, understand, and follow instructions. AR 266. Stress caused pain flares and

---

[5] The Commissioner points out that despite Plaintiff's stated inability to travel due to pain, Plaintiff had planned a trip to Los Angeles. *See* AR 832. This evidence does not indicate that Plaintiff took the trip. Moreover, the ALJ did not mention this trip or travel generally in his decision, so the Court does not consider it when evaluating the sufficiency of the ALJ's decision.

had "caused [her] to be bedridden for days at a time." AR 267. She experienced two to five

headaches per week, which were triggered by neck pain and sometimes lasted multiple days.

AR 53-54. She was unable to continue normal activities during headaches and had to lie down.

AR 54. Plaintiff performed light, easy household chores in fifteen-minute increments. AR 54-55.

Plaintiff received short-term disability compensation because she missed so much work.

AR 48-49. Her employer tried "everything she could" to set up a comfortable workstation for

Plaintiff, but Plaintiff was still "hurting and miserable." AR 50. She was ultimately laid off

during a workforce reduction, but she believed it was because of the amount of work she had

missed. AR 49. She experienced pain while sitting at a computer, typing, looking down at

paperwork, and driving. AR 50-51. She was able to sit for about an hour before needing to move

around. AR 51.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms," AR 21, and the ALJ made no finding of malingering.

Accordingly, the Court moves to the second step of the credibility analysis, at which the ALJ

was required to make specific, clear, and convincing findings to support his rejection of

Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036. Irrespective of the ALJ's decision upon

reconsideration of fibromyalgia at step two, the ALJ did not provide legally sufficient reasons for

discounting Plaintiff's pain testimony and committed the following errors.

### a. Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See*

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an

ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective

medical evidence,' without any 'specific findings in support' of that conclusion" (quoting

*Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009))). A court "cannot review whether the ALJ

provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

The ALJ briefly summarized Plaintiff's testimony. AR 21. The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record." *Id.* To support this finding, the ALJ selectively summarized the treatment record.
AR 22-23.

But "providing a summary of medical evidence . . . is not the same as providing clear and
convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert*, 980
F.3d at 1278 (alteration in original). Although the ALJ broadly rejects Plaintiff's reports of
chronic pain as inconsistent or unsupported by objective medical evidence, as discussed below,
the ALJ never states *which* elements of Plaintiff's testimony he found not credible and *which*
evidence contradicted that testimony. *Id.* at 1277. Indeed, after generally summarizing Plaintiff's
testimony, the ALJ does not further mention any testimony by Plaintiff. Nor in discussing
Plaintiff's medical records does the ALJ link any medical evidence to any testimony by Plaintiff.
As a result, the ALJ's opinion is nonresponsive to Plaintiff's testimony of how her pain is severe
and specifically debilitating. As the Ninth Circuit has repeatedly instructed, without adequate
specificity in the ALJ's opinion, the Court cannot evaluate whether the ALJ had specific, clear,
and convincing reasons supported by substantial evidence in the record to reject Plaintiff's
subjective symptom testimony. The ALJ may not simply summarize Plaintiff's testimony and
then summarize the medical record.

### b. Improvement with Treatment

The ALJ also discussed Plaintiff's purported improvement with treatment. A claimant's
improvement with treatment "an important indicator of the intensity and persistence of . . .
symptoms." 20 C.F.R. § 404.1529(c)(3). Symptom improvement, however, must be weighed
within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195,
1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional
symptom-free periods . . . are not inconsistent with disability.").

Plaintiff argues that the ALJ improperly cherry-picked the medical evidence to create a false narrative of improvement with treatment. The ALJ suggested that Plaintiff's shoulder condition, neck pain, and headaches improved with treatment. AR 22-23. The Commissioner argues that Plaintiff is merely asserting a different interpretation of the evidence and that the ALJ's interpretation is rational and must be upheld. *Burch*, 400 F.3d at 679.

Regarding Plaintiff's headaches, although the record supports that Plaintiff's headaches improved from more than 15 days per month to one day per week, neither the ALJ nor the Commissioner explain how one day per week is not disabling.[6] Per the testimony of the vocational expert, one day per week is disabling condition. *See* AR 64-65 (vocational expert testifying that for unskilled job one day per month is maximum absenteeism and for highly skilled jobs one and one-half to two days per month is the maximum).

Additionally, this improvement came after Plaintiff had to stop taking Topiramate and her headaches returned to three-to-four days per week. She then started a new medication, Emgality, and reported headache improvement one month before her social security hearing. Improvement with headaches is often cyclical and temporary and Plaintiff had just started the trial of her new medication, so the longevity and effectiveness of the improvement with her new medication is unknown. *See, e.g.*, *Colter v. Berryhill*, 685 F. App'x 616, 617 (9th Cir. 2017) (addressing a finding about headache improvement and explaining that the ALJ "failed to analyze the periods of improvement in the context of [the claimant's] treatment history to ensure that the improvement was not temporary," and "treatment records reflecting improvement 'must

_____

[6] The Commissioner notes that Plaintiff stated that she was "doing well" with a migraine only one day per week, but reducing debilitating headaches from more than 15 days per month to four days per month is a significant improvement and a patient may subjectively believe that is "doing well" by comparison. That does not, however, mean it is not a disabling condition under the Act.

be viewed in light of the overall diagnostic record'"); *Bello v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4635110, at *3 (D. Ariz. Sept. 24, 2019) ("[T]he treatment records merely showed temporary improvement in Plaintiff's headache-related symptoms following various medical procedures, so those records shouldn't have been viewed as impeaching."); *Sandra M. v. Comm'r, Soc. Sec. Admin.*, 426 F. Supp. 3d 647, 654 (D. Or. 2019) (noting that the plaintiff's headache improvements were "temporary" and concluding that "[a]lthough Plaintiff's migraines improved at various points throughout the record, the objective medical evidence indicates ongoing chronic pain despite intensive treatment and medication").

Regarding Plaintiff's neck and shoulder pain, as outlined above, the treatment records fail to provide substantial evidence of improvement to Plaintiff's *pain*, even if Plaintiff's range of motion improved. *See, e.g.*, AR 598-99, 840, 849-50. The ALJ acknowledges that Plaintiff continued to report persistent right-sided predominant cervical spine symptoms after surgery and repeated injections, but counters that her physical exam in January 2020 was mostly normal. AR 22-23. This examination, however, was performed because Plaintiff's surgical treatment, injections, and physical therapy had failed to treat her pain. AR 849-50 (notes from the January 20, 2020 visit describing that Plaintiff is seeing a pain management specialist for her ongoing pain, that she had recently attempted another steroid injection "to address her persistent neck pain symptoms," that physical therapy failed to treat her symptoms, that she "continues to report persistent right-sided predominant cervical spine symptoms that extends into the periscapular region of her shoulders," and that she made the appointment to "discuss additional treatment recommendations regarding her recent right shoulder rotator cuff repair surgery and residual symptoms"). Further, the examination had mixed results, with a mildly positive Hawkins test and mild tenderness with palpitation. Another examination around the same time in

2020 confirmed that Plaintiff's neck and shoulders were tender to palpitation. AR 811 (January 16, 2020). Plaintiff then tried yet another steroid injection in July 2020. AR 1004.

All of this shows that there was not substantial evidence in the record viewed in total to conclude that Plaintiff's symptoms improved with treatment. Thus the ALJ cherry-picked certain evidence supporting the ALJ's conclusion, the ALJ's interpretation of the evidence was not rational, and the evidence of improvement with treatment upon which the ALJ relied is insufficient to provide a clear and convincing reason to reject Plaintiff's testimony.

### c. Conservative Treatment

The ALJ also briefly noted that Plaintiff chose to discontinue Norco, an opioid prescribed for Plaintiff's pain, because she could not take "both opioid analgesics and clonazepam, which [Plaintiff] testified controls her restless leg syndrome." AR 22. The Commissioner argues that the ALJ reasonably rejected Plaintiff's pain testimony because her choice of pain management undermined the extent of her pain allegations. The type and degree of treatment a claimant seeks "is powerful evidence" regarding the extent of symptoms. *Burch*, 400 F.3d at 681. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The evidence cited by the ALJ in noting Plaintiff's choice to discontinue Norco in favor of clonazepam does not indicate whether Plaintiff chose to discontinue her entire pain management regime or merely this one incompatible prescription. *See* AR 845. Indeed, at the time of this decision, on January 24, 2020, Plaintiff was taking several medications, including gabapentin and tizanidine. AR 842-43. Further, there is no evidence to suggest that Plaintiff's

neck or shoulder pain was mild, only that at this point, her restless leg syndrome was causing her distress. *See* AR 845 ("She is still waking up at 3 or 4:00 a.m. with legs/feet 'twitching and shaking', sometime during the daytime."); AR 810 (January 16, 2020) ("The patient describes their pain as being aching/dull, burning, numb/tingling, and sharp/stabbing in nature. . . . The patient has been procrastinating talking to Dr. W[a]ng regarding her restless legs due to the concern of CLONAZEPAM precluding other treatment modalities. She not only experiences restless legs at night, but throughout the day as well. She has not been sleeping. She decided she will try the CLONAZEPAM for a month and see if it improves her quality of life."). Nor did the ALJ consider the relative effectiveness of the opioid on Plaintiff's pain compared to her other non-opioid pain medications or the clonazepam on her restless leg syndrome. Without a broader understanding of Plaintiff's pain management regime in January 2020 to contextualize her decision to substitute restless leg syndrome medication for her opioid medication, the ALJ's reasoning is not "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750. Thus, this is not a clear and convincing reason to discount Plaintiff's testimony.

### d. Lack of Support in Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (stating that the ALJ may not discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Therefore, even if objective medical evidence does not support Plaintiff's claimed limitations, that alone does not provide a clear and convincing reason to discount her testimony. *Robbins*, 466 F.3d at 883. Further, as discussed in evaluating whether the ALJ erred at step two, some of the "normal" findings and purportedly unsupportive "objective" medical evidence are not necessarily inconsistent with fibromyalgia. The ALJ's finding of "no support" is insufficient to reject Plaintiff's testimony.

### e.  Conclusion

The Court concludes that the ALJ erred in rejecting Plaintiff's subjective symptom testimony without specific, clear, and convincing reasons supported by substantial evidence in the record. This is harmful error, as Plaintiff's testimony about the frequency with which she had to miss or leave early from work due to pain could preclude employment. *See* AR 64-68. Moreover, the ALJ is required to consider a claimant's subjective experiences when determining the RFC. *Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017); *Garrison*, 759 F.3d at 1011. Regardless of the ALJ's decision at step two of whether fibromyalgia is a severe medically determinable impairment, the ALJ must reevaluate whether Plaintiff's subjective symptom testimony dictates a more restrictive RFC.

## C.  Medical Evidence

### 1.  Standards

Plaintiff applied for benefits on July 23, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence in the context of DIB. *See Revisions to Rules Regarding the Evaluation of*

*Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no

longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R.

§ 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state

that the agency does not defer to any particular medical opinions, even those from treating

sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social

security regulations are clearly irreconcilable with our caselaw according special deference to the

opinions of treating and examining physicians on account of their relationship with the

claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and

"consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R.

§ 404.1520c(c). Supportability is determined by whether the medical source presents

explanations and objective medical evidence to support his or her opinion. *Id.* § 404.1520c(c)(1).

Consistency is determined by how consistent the opinion is with evidence from other medical

and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however,

required to explain how he or she considered these secondary medical factors, unless he or she

finds that two or more medical opinions about the same issue are equally well-supported and

consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." *Id.* § 404.1520c(b). The Court must continue to consider whether the ALJ's analysis has

the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 2. Analysis

#### a. Dr. Rung

In January 2018, Dr. Rung assessed Plaintiff's chronic neck pain and fibromyalgia. AR 718-19. After examining Plaintiff, Dr. Rung recommended the following work activity limitations: walking for thirty minutes once a day, or for ten minutes three times a day; sitting for two hours in a day at one time, or for thirty to sixty minutes if repetitive sitting is required; using the right shoulder below shoulder level for thirty minutes at a time, and for a total of three hours in one day; and lifting no more than five pounds. AR 718. In addition, Plaintiff could have no prolonged neck positioning out of neutral; required an ergonomic workstation; needed to lie down for two to three hours per day; and could have no repetitive use of the right upper extremity. *Id.* Dr. Rung wrote, "Is my opinion, based upon the above work restrictions and her reported past history of frequent time loss in spite of a nearly ideal work environment, that even within these work restrictions she would not be able to maintain full-time competitive employment on a long-term basis." *Id.* When Plaintiff met with Dr. Rung again in March 2018 with a report of a recent flare-up of neck pain that was limiting her activities of daily living even more than usual, AR 707, Dr. Rung repeated her previously recommended work activity limitations. AR 708. At Plaintiff's next evaluation in August 2019, however, Dr. Rung recommended even more activity restrictions and opined that, "based upon history of fibromyalgia and chronic neck pain, that [Plaintiff] is disabled from performing competitive work. She would likely have to take off days from work so frequently that she would not be able

to maintain gainful employment." AR 881. The ALJ was "not persuaded by Dr. Rung's overly

restrictive opinion." AR 25.

The Court has already discussed why the ALJ's reasons for rejecting Dr. Rung's opinion,

which relied on "normal" examination findings, do not undermine Dr. Rung's conclusions about

the limiting effects of fibromyalgia. In omitting fibromyalgia, the ALJ therefore erred in finding

Dr. Rung's opinion unpersuasive as unsupported by objective medical evidence. Further, the

ALJ found that Dr. Rung's opinion was unpersuasive because it was "not consistent with . . .

treatment records documenting . . . improvement in pain levels with various treatment

modalities." AR 25. As discussed above, there is not substantial evidence in the record to prove

sustained improvement after treatment.

The ALJ also found Dr. Rung's opinion unpersuasive because it was "not consistent

with" the opinion evidence from the state agency medical consultants, Thomas Davenport, M.D.,

and Susan Moner, M.D. AR 25. Plaintiff argues that the opinions of agency reviewing doctors

cannot, by themselves, be considers substantial evidence contradicting the opinion of a treating

physician. This argument, however, is based on the previous system of hierarchy among types of

providers (treating, evaluating, and reviewing). The new regulations abolished that system. *See*

*Woods*, 32 F.4th at 792 (granting no special deference to the opinions of treating and examining

physicians under the new regulations). Instead, ALJs must consider the "supportability" and

"consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R.

§ 404.1520c(c). That analysis by the ALJ, however, is flawed because of his reliance on

improvement with treatment (consistency) and imaging and "normal" exams without

consideration of fibromyalgia (supportability). In short, "[t]he ALJ's error in finding that

fibromyalgia was not a medically determinable impairment at step two infected his analysis at

subsequent steps of the sequential evaluation," including his evaluation of Dr. Rung's opinion, "because the ALJ clearly did not consider the limitations caused by Plaintiff's diagnosed fibromyalgia." *Binsacca v. Berryhill*, 2019 WL 3082841, at *6 (N.D. Cal. July 15, 2019). The ALJ thus erred in finding Dr. Rung's opinion unpersuasive.

### b.  Mr. Smith

Plaintiff saw Christopher Jason Smith, PA-C, through Corvallis Pain Management for her chronic, incapacitating pain. *See, e.g.*, AR 449-50. Mr. Smith documented and treated Plaintiff's pain, noting as early as March 2017 that Plaintiff's symptoms "sound like" fibromyalgia. AR 450. At this visit, "[p]er patient's request," Mr. Smith agreed to "write a letter regarding work restrictions for her to avoid lifting ten pounds and prolonged twisting." *Id.* The ALJ rejected Mr. Smith's opinion:

> While some lifting/carrying and postural limitations are warranted by the evidence of degenerative disc disease and right shoulder surgery, with diffuse tenderness, the undersigned is not persuaded by Mr. Smith's opinion. Mr. Smith's citation to "patient's request" is weak support for his opinion, and while he notes "chronic incapacitating pain" at the neck, shoulders, and upper back, on physical exam he found only minimal antalgia, and significant tenderness to palpation of the elbows, wrists, and upper traps/shoulders. His limited neurological exam did not suggest muscle weakness or restricted range of motion. Nor does the undersigned find Mr. Smith's opinion consistent with the record as a whole, which documents both intact muscle strength, full range of motion, and improvement in pain levels with various treatment modalities.

AR 24 (citations omitted).

There are a few potential issues with the ALJ's analysis. First, the ALJ failed to explain how Mr. Smith's examination findings of "chronic incapacitating pain" and "significant tenderness to palpation" fail to support Mr. Smith's opinion. Second, as with Dr. Rung's opinion,

the ALJ did not evaluate Mr. Smith's opinion considering "fibromyalgia's unique characteristics, including that it is diagnosed based on a patient's self-reported symptoms and that outwardly normal physical examinations are to be expected." *Swales*, 852 F. App'x at 255-56. Rather, the ALJ relied on intact muscle strength and full range of motion to discount Mr. Smith's opinion. Even if it were reasonable for the ALJ to discount the functional restriction because it was based on Plaintiff's request, it is difficult to evaluate whether the ALJ reasonably found the restrictions in Mr. Smith's letter unsupported and inconsistent with the record as a whole without reevaluating the fibromyalgia issue.

### D.  Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be

resolved does the district court consider whether the ALJ would have to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* The district court need not credit statements as true just because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful errors in rejecting Plaintiff's alleged fibromyalgia at step two, by not offering specific, clear, and convincing reasons to reject Plaintiff's pain testimony, and in evaluating the medical evidence of Dr. Rung and Mr. Smith, although the latter error is primarily a result of the ALJ's step two error. The ALJ's error in evaluating Plaintiff's testimony primarily rests on the ALJ's evaluation that Plaintiff's subjective complaints were not supported by the medical record. How Plaintiff's testimony aligns with the objective medical evidence is "exactly the sort of issue[] that should be remanded to the agency for further proceedings." *Brown-Hunter*, 806 F.3d at 495. And although the ALJ failed to provide sufficient reasons for rejecting fibromyalgia at step two, it is not clear from the record that the ALJ is required to find Plaintiff disabled. *Swales*, 852 F. App'x at 256. Further proceedings are needed for the ALJ to reassess and augment the record and to provide an adequate explanation applying the correct legal standards and providing sufficient evidence relied upon in assessing Plaintiff's application for DIB.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS this case for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge